

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| v. § | CASE NO. 1:10-CR-29(2) |
| § | |
| MIGUEL BENITEZ-RODRIGUEZ, § | |
| *Defendant* § | |

## FINDINGS OF FACT AND RECOMMENDATION
## ON MOTION TO SEVER

Pursuant to 28 U.S.C. § 636(b) and the Local Rules for the United States District Court, Eastern District of Texas, and by order of the District Court[1], this matter was referred to the undersigned magistrate judge for a hearing and the submission of findings of fact and a report and recommendation on Defendant Miguel Benitez-Rodriguez's *Motion to Sever* [Clerk's doc. # 48].

**A.    Background**

On March, 10, 2010, officers with the Jefferson County Narcotics Task Force conducted a traffic stop on a black Dodge pickup truck traveling on Interstate 10 in Jefferson County, Texas. Alfredo Garcia-Aleman (hereinafter referred to as "Garcia") was identified as the driver of the pickup. Miguel Benitez-Rodriguez (hereinafter referred to as "Benitez") was identified as the sole

---

[1] *See Orders* referring motion [Clerk's doc. #48].

passenger. During a search of the pickup, deputies discovered approximately eight (8) kilograms of cocaine in a hidden compartment.

During the traffic stop, Garcia advised the arresting officer that the vehicle that he was driving belonged to a girlfriend of his and that he was returning to Atlanta, Georgia from Houston, Texas. After being arrested, Garcia made additional statements to DEA agents concerning the truck. In his statement, Garcia advised officers that he has known Benitez for approximately two years and they met in Mexico. He stated that he calls Benitez "amigo" and does not know Benitez's first or last name. Garcia told officers that he was returning to Atlanta from Houston after visiting a sick aunt. He provided officers with the name of the aunt but could not give them a contact number or an address. He advised agents that Benitez traveled with him so that he could visit a friend of his in Houston. He stated that he and Benitez stayed in a motel room for two days while in Houston and Benitez paid for the room. When questioned by agents about the cocaine, Garcia denied any knowledge of its existence.[2]

**B.     Benitez's Motion to Sever**

Benitez filed his *Motion to Sever* on April 13, 2010 [Clerk's doc. #40]. In his motion, Benitez contends that his case should be severed from Garcia's case because Garcia gave the statement to police after both men were arrested. Benitez admits that he was not directly implicated in Garcia's statements. However, he contends that the statement concerning how Garcia came into possession of the vehicle in which a large amount of cocaine was subsequently discovered by law

---

[2] This Court previously entered an order directing the Government to provide the Court with any and all statements made by Garcia which they intend to use at trial in this matter. [Clerk's doc. #67]. The Government has provided this Court with three reports (report of Lt. Tony Viator dated 3/10/2010; report of Dean Nance dated 3/10/2010; and report of Rick Erickson dated 3/17/2010). The Government has advised the Court that copies or the reports were previously provided in discovery.

enforcement officers is unbelievable. Benitez argues that he will not be able to cross examine Garcia unless he (Garcia) decides to testify. He contends that the admission of Garcia's post arrest statement violates *Bruton v. United States*, 391 U.S. 123 (1968). Benitez also argues that he and Garcia have different versions of the events leading to their arrest and therefore have antagonistic defenses, making it prejudicial for them to be tried together.

**C.     The Government's Response**

The Government responds by arguing that trying Benitez and Garcia together is justified because of judicial economy and that *Bruton* does not apply because Garcia did not make a confession or statement that directly inculpated Benitez.

**D.     Analysis**

A district court may grant a severance "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together." FED. R. CRIM. P. 14; *United States v. Matthews*, 178 F.3d 295, 298 (5th Cir. 1999).

    **i.     The *Bruton* Issue**

In *Bruton v. United States*, 391 U.S. 123, 137 (1968), the Supreme Court held that a defendant's Sixth Amendment right to confrontation is violated by the introduction into evidence of an extrajudicial confession by a non-testifying co-defendant when the confession implicates the defendant. However, in *Richardson v. Marsh*, 481 U.S. 200, 208, 107 S.Ct. 1702, 1708, 95 L. Ed.2d 176 (1987), the Supreme Court noted that in *Bruton*, the co-defendant's confession "expressly implicated" the defendant as his accomplice. The Supreme Court noted that "the calculus changes when confessions that do not name the defendant are at issue" and allowed the admission of co-

defendant confessions which were redacted to eliminate not only the defendant's name but also any reference to his or her existence. 481 U.S. at 211, 107 S.Ct. at 1709.

The Fifth Circuit Court of Appeals has also noted that the *Bruton* rule is not absolute. *See United States v. Payan*, 992 F.2d 1387, 1393 (5th Cir. 1993). In *Payan*, the co-defendant made a post-arrest statement to the effect that officers did not know who they were dealing with and that there were rich and powerful people involved in the offense. *Id.* at 1393. An investigating officer repeated the co-defendant's statement at trial. *Id.* Although the statement was not facially incriminating to Payan, his attorney had previously mentioned to the jury that Payan's family were somewhat wealthy and has a degree of power in the community. *Id.* The district court refused to grant a mistrial. In its holding, the Fifth Circuit noted that *Richardson v. Marsh* expressly declined to extend *Bruton* beyond instances involving facially incriminating confessions. *Id.* The Fifth Circuit held that the co-defendant's out-of-court statement at most incriminated Payan by contextual implication, so no reversible error occurred when the trial court refused to declare a mistrial. *Id.*

In short, "*Bruton* is inapplicable unless the co-defendant's out-of-court statement directly incriminates the non-confessing defendant without reference to other, admissible evidence." *United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998) (internal quotation omitted); *see also United States v. Kelly*, 973 F.2d 1145, 1151 (5th Cir. 1992) (*Bruton* not applicable because tape did not mention defendant as perpetrator but merely showed contacts with others in the scheme); *United States v. Bauer*, 551 F.3d 786, 791 (8th Cir. 2008) (*Bruton* does not apply to nonaccusatory statements which do not implicate the defendant). In this case, Garcia's statements do not implicate Benitez. Therefore *Bruton* is inapplicable and a severance should not be granted on that ground.

### ii. Antagonistic Defenses

As a general rule, persons indicted together should be tried together, particularly when the offense is conspiracy. *United States v. Simmons*, 374 F.3d 313, 317 (5th Cir. 2004). In ruling on a defendant's motion to sever, the district court must balance potential prejudice to the defendant against the public interest in joint trials where the case against each defendant arises from the same general transaction. *Id.* Here, Benitez argues that a severance is proper because he and Garcia have inconsistent stories about how they came to be occupants of the pickup truck, therefore a severance should be granted because they have antagonistic defenses.

In *Zafiro v. United States*, 506 U.S. 534, 539-39, 113 S. Ct. 933, 122 L. Ed.2d 317 (1993), the Supreme Court made it clear that "[m]utually antagonistic defenses are not prejudicial per se," and further noted that "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." To promote judicial economy and the interests of justice, the federal system prefers joint trials of defendants who are properly charged in joint indictments. *Id.* at 937. "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 938. "*Zafiro* teaches that joint defendants face a heavy burden in demonstrating to a district court that antagonistic defenses warrant granting a severance motion." *United States v. Daniels*, 281 F.3d 168, 177 (5th Cir. 2002). The defenses must be so diametrically opposed that the jury, in order to believe the core testimony offered on behalf of one defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant. *Id.* The conflict must concern the core or essence of a defense, not merely minor or peripheral matters. *Id.* Even

when such a conflict is present, giving rise to the risk of prejudice, the district court should take into account the public interest in judicial economy and the administration of justice served by joint trials and the possibility that limiting instructions or less drastic measures will suffice to cure any risk of prejudice. *Id.* Further, even if there is a risk of prejudice, the district court may give proper limiting instructions sufficient to cure the prejudice. *Id.* at 178.

Although both defendants may present different versions of how they came to be traveling in a pickup truck equipped with a hidden compartment containing cocaine, this Court assumes that their defenses are in fact consistent; that is, they both had no knowledge of the cocaine in the hidden compartment. Differing versions of how the defendants came into the possession of the truck does not concern the core of the defense. Even if it did, this Court finds that there is a public interest in judicial economy and in a joint trial. From the facts and circumstances of this case, this Court assumes that the same witnesses who would testify against Garcia would also testify against Benitez. Even if there were a risk of prejudice to Benitez, the district court can cure it with the proper limiting instructions.

**E.     Conclusion and Recommendation of the Court**

Accordingly, having considered the relevant legal factors, arguments and evidence presented, and based upon the facts and conclusions of law stated herein, the undersigned magistrate judge recommends that the district court deny Defendant Miguel Benitez-Rodriguez's *Motion to Sever* [Clerk's doc. # 48].

**F.     Objections**

Objections must be: (1) specific, (2) in writing, and (3) served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 1(a),

6(b), and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *see Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error of unobjected-to factual findings and legal conclusions accepted by the district court, *see Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc). The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation, a district judge must exercise its nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate's report and recommendation. *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

**SIGNED this the 9th day of July, 2010.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE